The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT A. BRIGHT, an individual,

Plaintiff,

v.

KALSHIEX LLC, a Delaware limited liability company; and KALSHI INC., a Delaware corporation,

Defendants.

Case No. 2:26-cv-04091

DEFENDANTS' MOTION TO STAY PROCEEDINGS

NOTE ON MOTION CALENDAR: November 20, 2026

ORAL ARGUMENT REQUESTED

**DUANE MORRIS LLP**

Jessica E. La Londe (WSBA# 56399)
Spear Tower, One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
P: 415.957.3225
F: 415.520.9395
jelalonde@duanemorris.com

*Attorney for Defendants Kalshi Inc. and KalshiEX LLC*

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Mr. Bright sued Defendants under Washington gambling-loss recovery and consumer-protection law, alleging that Defendants' event contracts are illegal gambling ..... 2

B. The Washington Attorney General is pursuing overlapping claims against KalshiEX in state court, where KalshiEX is subject to a preliminary injunction ..... 3

C. A petition for a writ of certiorari pending in the U.S. Supreme Court presents the federal preemption question raised in this case ..... 4

III. Courts Weigh Several Factors in Exercising Their Discretion to Stay Proceedings ..... 7

IV. All Three Factors Favor a Stay Because Pending Supreme Court Review Will Resolve Every Claim, Mr. Bright Faces No Harm, and Defendants Face Duplicative Litigation ..... 8

A. The Orderly Course of Justice Favors a Stay Because Supreme Court Review Will Settle or Simplify Every Claim and Ensure Uniform Treatment of Like Suits ..... 8

B. A Reasonably Bounded Stay Will Not Harm Mr. Bright ..... 11

C. Absent a Stay, Defendants Would Suffer Hardship from Duplicative Litigation, the Risk of Inconsistent Rulings and Duplicative Claims, and a Wave of Copycat Suits ..... 13

V. CONCLUSION ..... 14




Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Trump*,
241 F. Supp. 3d 1147 (W.D. Wash. 2017) ....12

*Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chi.*,
977 F.2d 1147 (7th Cir. 1992) ....11

*Arcand v. Catalyst Brands LLC*,
2026 WL 369417 (W.D. Wash. Feb. 10, 2026) .... *passim*

*Babare v. Sigue Corp.*,
2020 WL 8617424 (W.D. Wash. Sept. 30, 2020) ....9

*Blue Lake Rancheria v. Kalshi, Inc.*,
___ F.4th ___, 2026 WL 2728466 (9th Cir. Sept. 16, 2026)....10

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) ....14

*Centeno v. Inslee*,
310 F.R.D. 483 (W.D. Wash. 2015) ....9

*Chinaryan v. City of Los Angeles*,
122 F.4th 823 (9th Cir. 2024) ....10

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .... *passim*

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ....13

*Flaherty v. KalshiEX, LLC*,
No. 26-299 (U.S. Sept. 2, 2026) ....6, 15

*Ga. Gambling Recovery LLC v. Kalshi, Inc.*,
No. 4:25-cv-310 (M.D. Ga.) ....11

*Hendrix v. Cozy Earth Holdings, Inc.*,
2026 WL 2859155 (W.D. Wash. Sept. 23, 2026) ....9



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

*Ho-Chunk Nation v. Kalshi Inc.*,
No. 25-cv-698-wmc (W.D. Wis.) .......... 10-11

*KalshiEX, LLC v. Assad*,
190 F.4th 1098 (9th Cir. 2026) .......... *passim*

*KalshiEX, LLC v. Flaherty*,
172 F.4th 220 (3d Cir. 2026) .......... 5-6

*KalshiEX, LLC v. Schuler*,
___ F.4th ___, 2026 WL 2884087 (6th Cir. Sept. 25, 2026) .......... 6

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... *passim*

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) .......... *passim*

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......... 12-13

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) .......... 7

*N. Am. Derivatives Exch., Inc. v. Nevada*,
No. 25-7187, Dkt. # 37.2 (9th Cir. Feb. 17, 2026) .......... 8-9

*Naini v. King Cnty. Pub. Hosp. Dist. No. 2*,
2020 WL 468910 (W.D. Wash. Jan. 29, 2020) .......... 12

*Pac. 5000, L.L.C. v. Kitsap Bank*,
22 Wn. App. 2d 334, 511 P.3d 139 (2022) .......... 14

*In re PG&E Corp. Sec. Litig.*,
100 F.4th 1076 (9th Cir. 2024) .......... 8

*Port of Seattle v. Boeing Co.*,
2022 WL 17176858 (W.D. Wash. Nov. 23, 2022) .......... 13

*Robinhood Derivatives, LLC v. Dreitzer*,
No. 25-7831, 2026 WL 2546925 (9th Cir. Aug. 28, 2026) (mem.) .......... 5-6

*Washington v. KalshiEX, LLC*,
No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026) .......... 3



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

*Washington v. KalshiEX, LLC*,
No. 26-2-10264-3 SEA (Wash. Super. Ct. King Cnty. Mar. 27, 2026) .............................. 3-4

**Statutes**

7 U.S.C. § 1a.......................................................................................................................4

7 U.S.C. § 2 ..................................................................................................................... 5-6

7 U.S.C. § 7a-2 ....................................................................................................................5

RCW 4.24.070 ........................................................................................................... *passim*

RCW 9.46 ................................................................................................................. *passim*

**Other Authorities**

Further Definition of "Swap"—Inclusions, 91 Fed. Reg. 66,022 (proposed Oct. 19, 2026) (to be codified at 17 C.F.R. § 1.3)....................................................................7

Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806 (proposed June 12, 2026)..........................................................................................................................7



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

Defendants KalshiEX LLC ("**KalshiEX**") and Kalshi Inc. ("**Kalshi**") (together, "**Defendants**"), by and through undersigned counsel, hereby jointly move to stay the above-captioned litigation. In support thereof, Defendants state as follows:

## I. INTRODUCTION

This single-plaintiff case is a small part of a much larger national fight with far higher stakes. At the core of that fight is federal preemption, a question being litigated in high-profile cases across the country, with more decisions to come. This case should not proceed toward a result that the pending litigation could void.

Accordingly, there is good cause to stay this litigation because all three *CMAX* factors favor a stay: a stay will serve the orderly course of justice, will not harm Mr. Bright, and will spare Defendants the hardship of litigating ahead of the Supreme Court. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The first factor is decisive here, because every claim in this case ultimately turns on that preemption question, now presented to the U.S. Supreme Court on a petition for a writ of certiorari: whether the federal Commodity Exchange Act preempts state gambling laws like Washington's as applied to sports-related event contracts traded on federally regulated exchanges such as the one KalshiEX operates. Three federal courts of appeals have answered that question three different ways.

Meanwhile, the State of Washington is pursuing the same theory as Mr. Bright, under the same statutes, to recover the same allegedly lost money—including Mr. Bright's—in King County Superior Court. There, the State has already obtained a preliminary injunction barring KalshiEX from offering the challenged contracts in Washington. That order forecloses any further or ongoing alleged harm to Mr. Bright.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

Pressing forward with Mr. Bright's case would waste this Court's resources. The parties would litigate under a legal framework the Supreme Court may soon displace, inviting inconsistent rulings. Allowing this later suit to proceed would also invite copycat litigation, encouraging a race to the courthouse by other traders seeking to file suits like Mr. Bright's, all to litigate a question that a single Supreme Court decision will resolve. A stay, by contrast, costs Mr. Bright nothing. The State's preliminary injunction already addresses any ongoing harm, and Mr. Bright seeks only money for past trading. Courts in this District and across the country have stayed cases in this posture. Defendants ask for the same relief: an initial six-month stay, subject to regular status reports and this Court's continuing control.

## II. BACKGROUND

### A. Mr. Bright sued Defendants under Washington gambling-loss recovery and consumer-protection law, alleging that Defendants' event contracts are illegal gambling

Scott A. Bright ("**Mr. Bright**") commenced this action pursuant to the Washington Superior Court Civil Rules. *See generally* Dkt. # 1-2 ("Compl."). Mr. Bright alleges that between June 17 and August 14, 2026, he transferred $315,353.94 in 253 separate debits and used those funds to trade event contracts on the outcomes of sporting events. Compl. ¶ 4.16. He alleges a net loss of $308,781.62, inclusive of fees. *Id.* ¶ 4.20. Yet he demands $580,544.98 on Count I—roughly $265,000 above his alleged deposits—by totaling his allegedly losing contracts without offsetting his winning ones. *Id.* ¶ 4.22.

Every claim rests on the premise that Defendants' event contracts are illegal gambling under chapter 9.46 RCW. *Id.* ¶¶ 5.2, 5.7, 5.13. Mr. Bright sues both Defendants, jointly and severally, under RCW 4.24.070 (the "**LRA**") (Count I); under the Consumer Protection Act



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

("**CPA**"), ch. 19.86 RCW (Count II); and, in the alternative, for unjust enrichment (Count III). *Id.* ¶¶ 5.1–5.15, § VI.

Defendants removed the action on October 23, 2026. *See generally* Dkt. # 1.

**B. The Washington Attorney General is pursuing overlapping claims against KalshiEX in state court, where KalshiEX is subject to a preliminary injunction**

The State of Washington is pursuing the same theory, and seeks the same recovery for Mr. Bright, in a case pending before the Superior Court of Washington for King County. *See generally* Complaint for Injunctive and Other Relief, *Washington v. KalshiEX, LLC*, No. 26-2-10264-3 SEA (Wash. Super. Ct. King Cnty. Mar. 27, 2026), attached as Exhibit A ("Ex. A") to the Declaration of Jessica La Londe ("La Londe Decl."). On March 27, 2026, the Attorney General sued KalshiEX in that court, alleging that its platform violates the CPA, the LRA, and RCW 9.46.240. Ex. A ¶ 2.1. Suing as *parens patriae* for Washington residents, the State seeks to recover "all money Washingtonians have lost" through KalshiEX, along with restitution, disgorgement, and a consumer-by-consumer accounting. Ex. A ¶¶ 6.13, 7.5–7.9.[1] Mr. Bright's complaint specifically invokes the State's case: he pleads that his trading postdated the State's suit and relies on that suit to establish the CPA's public-interest element. Compl. ¶¶ 4.8, 5.8.

The Superior Court has preliminarily enjoined the conduct Mr. Bright challenges and entered an amended order on August 12, 2026. *See* Amended and Updated Order Granting Preliminary Injunction, *Washington v. KalshiEX, LLC*, No. 26-2-10264-3 SEA (Wash. Super.

[1] KalshiEX removed the State's action to this Court, which remanded it to King County Superior Court on May 5, 2026. *See Washington v. KalshiEX, LLC*, No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026).



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

Ct. King Cnty. Aug. 12, 2026), attached as Exhibit B ("Ex. B") to the La Londe Decl.[2] The amended order bars KalshiEX from offering certain event contracts in Washington, required geolocation controls by September 2, 2026, requires KalshiEX to preserve Washington consumer records, and freezes transaction fees collected from Washington consumers. *See* Ex. B, Order ¶¶ (1)–(4). The State's action remains pending.

### C. A petition for a writ of certiorari pending in the U.S. Supreme Court presents the federal preemption question raised in this case

The threshold question in both this case and the State's action is whether the federal Commodity Exchange Act ("**CEA**"), 7 U.S.C. § 1 *et seq.*, preempts state gambling law as applied to sports-related event contracts traded on a designated contract market ("**DCM**") regulated by the Commodity Futures Trading Commission ("**CFTC**").

That question bears directly on this case. KalshiEX operates a CFTC-designated DCM, and the sports-related event contracts that Mr. Bright challenges are listed and traded on that exchange. Mr. Bright and the State contend that those contracts are illegal gambling under Washington law. *See, e.g.*, Compl. ¶¶ 5.2, 5.7; Ex. A ¶ 4.18. Defendants maintain, and expressly preserve their position, that the contracts are subject to the CFTC's exclusive jurisdiction and that the CEA therefore preempts the Washington laws on which Mr. Bright's claims rest. The preemption question turns on two issues of statutory interpretation: first, whether those contracts are "swaps"—a category of financial instruments subject to federal regulation—under 7 U.S.C. § 1a(47)(A)(ii); and, second, if so, whether the CFTC's

[2] In doing so, the Superior Court rejected KalshiEX's federal preemption defense at the preliminary-injunction stage. Ex. B, Concl. of Law, ¶¶ 3–8.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

"exclusive jurisdiction" over swaps "traded or executed" on a DCM, 7 U.S.C. § 2(a)(1)(A), displaces state law. Three federal courts of appeals have addressed those issues in cases involving KalshiEX, and each has resolved them differently.

On April 6, 2026, a divided Third Circuit panel affirmed a preliminary injunction barring New Jersey from enforcing its sports-wagering laws against KalshiEX. *KalshiEX, LLC v. Flaherty*, 172 F.4th 220 (3d Cir. 2026). The majority concluded that KalshiEX was likely to succeed in showing that its sports-related event contracts are swaps and that the CEA preempts New Jersey law under principles of both field and conflict preemption; it did not separately address whether § 2(a)(1)(A) expressly preempts state law. *Id.* at 227–31. Judge Roth dissented. *Id.* at 232–42.

On August 28, 2026, the Ninth Circuit reached the opposite result as to Nevada's gaming laws, affirming in relevant part the dissolution of a preliminary injunction. *KalshiEX, LLC v. Assad*, 190 F.4th 1098 (9th Cir. 2026). The panel agreed with KalshiEX that § 2(a)(1)(A) expressly "preempts state regulation of swaps that are 'traded or executed' on a DCM," *id.* at 1110, but concluded that sports-related event contracts "are likely not swaps under the CEA," *id.* at 1120, rejected field and conflict preemption, *id.* at 1120–22, and expressly disagreed with *Flaherty*, *id.* at 1122. Judge Lee concurred, writing that the CEA's special rule for event contracts, 7 U.S.C. § 7a-2(c)(5)(C), gave him "pause" because it "appears to give the CFTC discretion whether to ban altogether gaming contracts," and noting that the CFTC has proposed to revise the regulation on which he relied. *Id.* at 1124 (Lee, J., concurring). In a companion disposition, the court affirmed the denial of preliminary relief to Robinhood Derivatives, LLC on the same reasoning. *Robinhood Derivatives, LLC v. Dreitzer*,



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

No. 25-7831, 2026 WL 2546925, at *1 (9th Cir. Aug. 28, 2026) (mem.). KalshiEX petitioned for rehearing en banc in *Assad* on September 9, 2026.

On September 25, 2026, the Sixth Circuit adopted yet another approach. *See KalshiEX, LLC v. Schuler*, ___ F.4th ___, 2026 WL 2884087 (6th Cir. Sept. 25, 2026). Like the Ninth Circuit, it held that sports-related event contracts are not swaps, though on different reasoning. *Id.* at *8–18. Unlike the Ninth Circuit, it held that § 2(a)(1)(A) "neither expressly nor impliedly preempts the States' gambling laws," *id.* at *18, and unlike the Third Circuit, it rejected implied preemption, *id.* at *23–28. The court therefore held that KalshiEX had "failed to establish a likelihood of success under all preemption principles." *Id.* at *28. The courts of appeals are thus divided not only on the result, but on each step of the analysis.

A petition for a writ of certiorari presenting the preemption question is now pending. New Jersey has petitioned for review of *Flaherty*, calling the split "direct, acknowledged, and irreconcilable" and asking the Court to resolve it "this Term." Pet. for Writ of Cert. at 1, 20, *Flaherty v. KalshiEX, LLC*, No. 26-299 (U.S. Sept. 2, 2026), attached as Exhibit C to the La Londe Decl.

Additional decisions on the question are pending.[3] The Executive Branch is also acting on the question: the CFTC has proposed a rule that would further define "swap" to expressly include event contracts, "including those based on sports-, politics-, cultural-, and weather-

---

[3] *See KalshiEX, LLC v. Martin*, No. 25-1892 (4th Cir.) (argued May 7, 2026); *Commonwealth v. KalshiEX, LLC*, No. SJC-13906 (Mass.) (argued May 4, 2026); *KalshiEX, LLC v. Williams*, No. 26-1835 (2d Cir.); *KalshiEX, LLC v. Cafferelli*, No. 26-2239 (2d Cir.); *United States v. Wisconsin*, Nos. 26-2636, 26-2675, 26-2696 (7th Cir.); *KalshiEX, LLC v. Bird*, No. 26-2874 (8th Cir.); *KalshiEX, LLC v. Cox*, No. 26-4100 (10th Cir.).



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

related events," Further Definition of "Swap"—Inclusions, 91 Fed. Reg. 66,022 (proposed Oct. 19, 2026) (to be codified at 17 C.F.R. § 1.3), and the CFTC has separately proposed to revise Regulation 40.11, Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806 (proposed June 12, 2026).

### III. Courts Weigh Several Factors in Exercising Their Discretion to Stay Proceedings

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

This power includes staying an action "pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)). To determine whether a stay is appropriate, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX*, 300 F.2d at 268. "Among those competing interests are (1) the possible damage which may result from granting a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Arcand v. Catalyst Brands LLC*, 2026 WL 369417, at *2 (W.D. Wash. Feb. 10, 2026) (citing *CMAX*, 300 F.2d at 268).



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

## IV. All Three Factors Favor a Stay Because Pending Supreme Court Review Will Resolve Every Claim, Mr. Bright Faces No Harm, and Defendants Face Duplicative Litigation

A stay is warranted because each of the three *CMAX* factors, as applied by courts in this District, weighs heavily in favor of a stay. *See Arcand*, 2026 WL 369417, at *2.

### A. The Orderly Course of Justice Favors a Stay Because Supreme Court Review Will Settle or Simplify Every Claim and Ensure Uniform Treatment of Like Suits

The most important *CMAX* factor in this case—the "orderly course of justice"—asks whether a stay will simplify or complicate the "issues, proof, and questions of law" in the case. *Id.* (citing *CMAX*, 300 F.2d at 268). A stay is proper under this factor where another proceeding, even if it does not "settle every question of fact and law," will "in all likelihood . . . settle many and simplify them all." *Landis*, 299 U.S. at 256. This is true here.

Although the other proceeding need not control the outcome for this factor to weigh in favor of a stay, *see Leyva*, 593 F.2d at 863–64, a Supreme Court decision on the issues described above likely would control the outcome of this case. In light of such circumstances, the Ninth Circuit "ha[s] repeatedly held that a district court does not abuse its discretion by staying litigation for efficiency reasons pending resolution of other related proceedings." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1086 (9th Cir. 2024). Accordingly, "[e]specially in cases of extraordinary public moment" like this one, a litigant "may be required to submit to delay not immoderate in extent." *Landis*, 299 U.S. at 256. A question of federal law that has divided the circuits and drawn broad amicus attention, including from the federal regulator charged with administering the statute, is certainly such a matter of extraordinary public moment. *See* CFTC Amicus Br. at 1–2, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187,



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

Dkt. # 37.2 (9th Cir. Feb. 17, 2026), attached as Exhibit D to the La Londe Decl.

If the CEA preempts Washington gambling law as applied to contracts traded on KalshiEX's DCM, Mr. Bright's LRA, CPA, and unjust-enrichment claims all fail. *See supra* Parts II.A, II.C. Courts in this District stay cases in similar postures. Then-Chief Judge Pechman of this Court stayed a case so that the Supreme Court could resolve "the central open legal question." *Centeno v. Inslee*, 310 F.R.D. 483, 491 (W.D. Wash. 2015). Judge Coughenour similarly stayed a damages suit pending the Supreme Court's resolution of a circuit split that would define the plaintiff's claim. *Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020) ("[A] stay will promote the orderly course of justice because it will allow the Supreme Court to settle a question of law that is central to this litigation."). And Judge Jones stayed a Washington CPA case at the pleading stage pending a Ninth Circuit decision on a dispositive threshold question, finding that going forward would risk inconsistent rulings and wasted resources. *Hendrix v. Cozy Earth Holdings, Inc.*, 2026 WL 2859155, at *2 (W.D. Wash. Sept. 23, 2026).

The federal question is not merely a defense; it is embedded in the elements of Mr. Bright's own claims. The LRA reaches only money lost at "illegal gambling games." RCW 4.24.070. And Washington's definition of "gambling" excludes "bona fide business transactions valid under the law of contracts," including "contracts for the purchase or sale at a future date of securities or commodities." RCW 9.46.0237. Defendants contend that the contracts listed on KalshiEX's CFTC-designated exchange fall within that exclusion—a position that Defendants preserve, and a question closely tied to the "swap" question presented to the Supreme Court. *Supra* Part II.C. Even a Supreme Court decision limited to that statutory



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

question would thus shape the merits of every claim here.

The Ninth Circuit's opinion in *Assad* does not change that analysis. *See supra* Part II.C.[4] A district court bound by circuit precedent may still stay proceedings under *Landis* while a party seeks certiorari. *Chinaryan v. City of Los Angeles*, 122 F.4th 823, 825 (9th Cir. 2024) (order) (holding that, even after the mandate issued, the district court retained authority to stay proceedings while a party "petition[s] for writ of certiorari"). That is especially appropriate where, as here, the controlling opinion is subject to challenge: *Assad* arose on a preliminary-injunction record, faces a pending petition for rehearing en banc, and would be directly affected by any Supreme Court ruling. The Ninth Circuit itself has since acknowledged that what "exclusive" means in the CEA "is subject to much disagreement both among the litigants and in other proceedings." *Blue Lake Rancheria v. Kalshi, Inc.*, ___ F.4th ___, 2026 WL 2728466, at *6 (9th Cir. Sept. 16, 2026). And the CFTC has since proposed a rule that would define "swap" to expressly include sports-related event contracts—the very question on which *Assad* turned. *See supra* Part II.C. Without a stay, the parties and the Court would litigate dispositive motions, discovery, and perhaps trial under rules that, notwithstanding *Assad*, may not survive the Supreme Court's review. Other courts facing suits against Kalshi, including private loss-recovery suits, have stayed them. *See, e.g.*, *Ho-Chunk Nation v. Kalshi Inc.*, No. 25-cv-698-wmc, Dkt. # 114, at 5–8 (W.D. Wis. Sept. 11, 2026) (certifying Indian Gaming Regulatory Act and CEA preemption questions for interlocutory appeal and staying the entire tribal action),

---

[4] Defendants recognize that *Assad* currently binds this Court and do not ask the Court to depart from it or decide preemption on this motion, but Defendants respectfully maintain that *Assad* was wrongly decided and expressly preserve all arguments to that effect for further review.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

attached as Exhibit E to the La Londe Decl.; *Ga. Gambling Recovery LLC v. Kalshi, Inc.*, No. 4:25-cv-310, Dkt. # 73 (M.D. Ga. May 18, 2026) (text-only order staying Georgia loss-recovery action for six months pending potential Supreme Court review), attached as Exhibit F to the La Londe Decl.

A stay also promotes uniform treatment of like suits. The same preemption question controls the State's action against KalshiEX, where the Superior Court has already ruled on it at the preliminary-injunction stage, and the private loss-recovery suits pending around the country. *Supra* Part II.B; Ex. B, Concl. of Law, ¶¶ 3–8. The Supreme Court's decision will govern every one of them. "In the interests of uniform treatment of like suits there is much to be said for delaying the frontrunner." *CMAX*, 300 F.2d at 269. That interest is especially strong here, because Congress created the CFTC's exclusive jurisdiction in part to avoid "the same unwelcome specter of non-uniformity" that piecemeal state-by-state rulings would create. *Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chi.*, 977 F.2d 1147, 1156–57 (7th Cir. 1992). Mr. Bright commenced this action six months after the State filed suit and built his complaint on the State's case. Dkt. # 1 ¶¶ 25–27; Compl. ¶¶ 4.6, 4.8, 5.8. Without a stay, this later suit would become the frontrunner, reaching the merits of a question that the Supreme Court, not this Court, is positioned to resolve for all of these cases—and inviting copycat suits on that same question.

### B. A Reasonably Bounded Stay Will Not Harm Mr. Bright

The next *CMAX* factor considers "the possible damage which may result from granting a stay." *Arcand*, 2026 WL 369417, at *2 (citing *CMAX*, 300 F.2d at 268). Only where a stay poses "a fair possibility" of damage must the movant show "a clear case of hardship or



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

inequity." *Landis*, 299 U.S. at 255. Mr. Bright cannot clear that threshold.

First, Mr. Bright seeks only monetary recovery for past trading. A plaintiff who seeks "only damages for past harm" suffers, at worst, "a delay in [his] monetary recovery." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110, 1112 (9th Cir. 2005). Courts in this District therefore "routinely grant stays that would delay recovery of money damages." *Naini v. King Cnty. Pub. Hosp. Dist. No. 2*, 2020 WL 468910, at *2 (W.D. Wash. Jan. 29, 2020). Like the *CMAX* plaintiff, who "sought only damages" and "alleged no continuing harm," *Lockyer*, 398 F.3d at 1110, Mr. Bright sues only for himself, alleges that he made his final transfer on August 14, 2026, and seeks monetary recovery, together with preservation and production of records. Compl. ¶¶ 1.3, 4.13, 6.1–6.7. He seeks no injunction against ongoing trading or declaratory relief.

Second, a stay could not lead to any ongoing harm. The Superior Court has already barred KalshiEX from offering sports-related event contracts in Washington and required geolocation controls, Ex. B, Order ¶¶ (2)–(3), and Mr. Bright acknowledges that his access has been blocked, Compl. ¶ 4.14. Where another proceeding already provides the forward-looking relief at issue, prejudice from a stay is "minimal—if there is any at all." *Ali v. Trump*, 241 F. Supp. 3d 1147, 1152 (W.D. Wash. 2017) (staying plaintiffs' motion for injunctive relief because a nationwide injunction entered in another district "already provide[d] Plaintiffs the relief they seek"). The State is also already pursuing recovery of alleged consumer losses as *parens patriae* for all Washington residents, Mr. Bright included. Ex. A ¶¶ 1.5, 7.9.

In any case, to the extent any recovery were ever available, any delay would be compensable. Mr. Bright demands prejudgment interest, Compl. ¶ 6.5, and Defendants dispute



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

that he is entitled to it or to any recovery. But if Mr. Bright were ever to prevail, he could seek to be compensated for the delay through that interest. *See Port of Seattle v. Boeing Co.*, 2022 WL 17176858, at *5 (W.D. Wash. Nov. 23, 2022) (granting stay where delay would not meaningfully harm plaintiff in part because "any future judgment will fully compensate [plaintiff] for the money it might spend . . . with interest" as a result of the stay). The amended order also protects relevant records and certain fee funds: it requires KalshiEX to preserve records reasonably related to Washington consumers and maintain the status quo as to funds obtained from consumers who identified or self-reported as Washingtonians, as a result of transaction fees for activity prohibited by the order. Ex. B, Order ¶¶ (1), (4).

Third, the requested stay is reasonably bounded. A stay "should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864; *see Landis*, 299 U.S. at 257 (stay must be "so framed in its inception that its force will be spent within reasonable limits"). Unlike the open-ended stays the Ninth Circuit has rejected, *see Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007); *Lockyer*, 398 F.3d at 1112–13, the proposed stay awaits a petition already pending before the Supreme Court, has a fixed six-month term, requires joint status reports every ninety days and within fourteen days after the Supreme Court acts on any relevant petition, and permits any party to move to extend or lift it. That structure leaves this Court in control of the stay's length.

### C. Absent a Stay, Defendants Would Suffer Hardship from Duplicative Litigation, the Risk of Inconsistent Rulings and Duplicative Claims, and a Wave of Copycat Suits

The second *CMAX* factor considers "the hardship or inequity which a party may suffer



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

in being required to go forward." *Arcand*, 2026 WL 369417, at *2 (citing *CMAX*, 300 F.2d at 268). Defendants face three hardships: litigating under a framework the Supreme Court may soon displace, *supra* Part IV.A; the risk of inconsistent rulings and duplicative claims created by the State's parallel suit; and the prospect of defending against an unknown number of copycat suits by litigants racing to the courthouse, all on a question that a single Supreme Court decision will resolve.

The State's parallel claim creates the second hardship. Mr. Bright seeks his alleged trading losses under RCW 4.24.070. Compl. ¶¶ 5.1–5.5. The State, as *parens patriae*, invokes the same statute to recover "all money Washingtonians have lost" through KalshiEX, and the amended order preserves transaction-fee funds for prohibited activity obtained from consumers who identified or self-reported as Washingtonians. Ex. A ¶¶ 1.5, 6.13, 7.5–7.9; Ex. B, Order ¶ (4). Yet "there can be no double recovery for the same injury," *Pac. 5000, L.L.C. v. Kitsap Bank*, 22 Wn. App. 2d 334, 343, 511 P.3d 139, 145 (2022), including across government and private suits, *California v. IntelliGender, LLC*, 771 F.3d 1169, 1179 (9th Cir. 2014). Competing claims to the same alleged losses would force the very offset disputes that rule prevents. Defendants ask only that one Supreme Court decision govern both cases.

The third hardship follows from the first two. If this later suit proceeds, other traders will have every incentive to file their own, forcing Defendants to defend serial actions on a question that a single Supreme Court decision will resolve. *See supra* Part IV.A.

## V. CONCLUSION

For these reasons, Defendants respectfully request that the Court stay this action for an initial period of six months; direct the parties to file joint status reports every ninety days and



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

within fourteen days after the Supreme Court's disposition of the petition for certiorari in *Flaherty v. KalshiEX, LLC*, No. 26-299, and any related petitions; and permit any party to move to extend or lift the stay based on that disposition or other changed circumstances.

Dated this 30th day of October, 2026

**DUANE MORRIS LLP**

*/s/ Jessica E. La Londe*
Jessica E. La Londe (WSBA# 56399)
Spear Tower, One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
P: 415.957.3225
F: 415.520.9395
jelalonde@duanemorris.com

*Attorney for Defendants*

**CERTIFICATION**

I certify this motion contains 4,106 words, in compliance with the Local Civil Rules.

*/s/ Jessica E. La Londe*
Jessica E. La Londe (WSBA# 56399)
*Attorney for Defendants*