The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT A. BRIGHT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KALSHIEX LLC, a Delaware limited liability company; and KALSHI INC., a Delaware corporation,<br><br>Defendants. | Case No.: 2:26-cv-04091<br><br>DEFENDANTS KALSHIEX LLC AND KALSHI INC.'S MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR: November 27, 2026<br><br>ORAL ARGUMENT REQUESTED |

**DUANE MORRIS LLP**

Jessica E. La Londe (WSBA# 56399)
Spear Tower, One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
P: 415.957.3225
F: 415.520.9395
jelalonde@duanemorris.com

*Attorney for Defendants KalshiEX LLC and Kalshi Inc.*

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. The Parties on the Platform .......... 2

B. Plaintiff's Transactions on the Platform .......... 3

C. The Alleged Counterparty .......... 4

D. The Attorney General Action and Kalshi's Separate Motion to Stay .. 4

E. Plaintiff's Complaint .......... 5

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 6

A. Kalshi Operated Under Color of Law .......... 6

B. Plaintiff Fails to State a Cause of Action Under RCW 4.24.070, the Washington LRA .......... 9

1. Kalshi Is Not the "Dealer or Player Winning" Under the LRA .......... 10

2. Defendants Are Not the "Proprietor for Whose Benefit Such 'Game' Was Played or Dealt" .......... 12

3. Plaintiff Does Not Plead the Money Lost at Any Identified Game .......... 14

4. Plaintiff Does Not Plead that His Transactions Occurred in Washington .......... 15

C. Plaintiff Has Failed to State a Cause of Action Under the CPA .......... 16

**1.** Plaintiff Fails to Identify Any Unfair or Deceptive Act .......... 16

a. There Is No Per Se CPA Violation .......... 16

b. Plaintiff Otherwise Fails to Identify Any Unfair or Deceptive Act .......... 18

2. Plaintiff Does Not Plead That Any Act of Defendants Caused His Injury .......... 19

3. Plaintiff Does Not Plead an Injury to Business or Property ... 20




Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

D. Plaintiff Fails to State a Claim for Unjust Enrichment......................21

1. Equity Does Not Permit Recovery of Gambling Losses Beyond What the Statute Allows ..........................................21

2. Plaintiff's Allegations Negate Any Inequitable Retention By Kalshi.......................................................................................22

3. An Express Contract Governs the Parties' Relationship........23

V. CONCLUSION ...........................................................................................23



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

# TABLE OF AUTHORITIES

## Cases

*Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316 (3d Cir. Apr. 28, 2025) ........ 20

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015 (N.D. Cal. 2025) ........ 10, 13-14, 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 6, 12, 22

*In re Avista Corp. Sec. Litig.*, No. CS-02-328-FVS, 2004 WL 7329836 (E.D. Wash. Aug. 3, 2004) ........ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 6

*Best Way Motor Freight, Inc. v. United States*, 253 F. Supp. 314 (W.D. Wash. 1966) ........ 8

*Brummett v. Washington's Lottery*, 171 Wash. App. 664 (2012) ........ 17

*Chandler v. Wash. Toll Bridge Auth.*, 17 Wash. 2d 591 (1943) ........ 23

*Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002) ........ 20

*Dew-Becker v. Wu*, 123 N.E.3d 86 (Ill. App. 2018) ........ 11

*EB Holdings II, Inc. v. Ill. Nat'l Ins. Co.*, 108 F.4th 1211 (9th Cir. 2024) ........ 1

*G.G. v. Valve Corp.*, No. C16-1941JLR, 2020 WL 7385710 (W.D. Wash. Dec. 16, 2020) ........ 18

*Handlin v. On-Site Manager Inc.*, 187 Wash. App. 841 (2015) ........ 17

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778 (1986) ........ 17

*Heitfeld v. Benevolent & Protective Order of Keglers*, 36 Wash. 2d 685 (1950) ........ 13, 14, 21

*Horluck Transp. Co. v. Eckright*, 56 Wash. 2d 218 (1960) ........ 7, 9

*Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380 (9th Cir. 1953) ........ 3

*KalshiEX, LLC v. Assad*, 190 F.4th 1098 (9th Cir. 2026) ........ 8



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

*Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018)....13

*Lairmore v. Drake*, 202 P.2d 473 (Or. 1949)....14

*Lavery v. Kalshi Inc.*, No. 25 C 14184, 2026 WL 2018471 (N.D. Ill. July 13, 2026)....12

*Lynden Transfer, Inc. v. United States*, 263 F. Supp. 336 (W.D. Wash. 1967)....7-8

*Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024)....19

*McLeod v. Valve Corp.,* No. C16-1227-JCC, 2016 WL 5792695 (W.D. Wash. Oct. 4, 2016)....20

*Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731 (N.D. Ill. 2016)....10

*PTP OneClick, LLC v. Avalara*, 413 F. Supp. 3d 1050 (W.D. Wash. 2019)....1

*Reuter v. MasterCard International, Inc.*, 921 N.E.2d 1205 (Ill. App. 2010)....11

*Robey v. SPARC Grp. LLC*, 311 A.3d 463 (N.J. 2024)....20

*Romano v. Torch Elecs., LLC*, No. 2:23-cv-04043, 2023 WL 9064602 (W.D. Mo. Aug. 21, 2023)....20

*State v. Reader's Digest Ass'n, Inc.*, 81 Wash. 2d 259 (1972)....17

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)....3

*Young v. Young*, 164 Wash. 2d 477 (2008)....21

*Zhen v. DraftKings, Inc.*, No. 25-cv-04618-CRB, 2026 WL 2186199 (N.D. Cal. July 29, 2026)....19

**Statutes**

Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*....*Passim*

Consumer Protection Act, chapter 19.86 RCW....*Passim*

Loss Recovery Act, RCW 4.24.070....*Passim*

**Other Authorities**

Federal Rule of Civil Procedure 12....*Passim*



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

Defendants KalshiEX LLC ("**KalshiEX**") and Kalshi Inc. ("**Kalshi Inc.**") (together, "**Defendants**" or "**Kalshi**"), by and through undersigned counsel, hereby jointly move to dismiss the above-captioned litigation. In support thereof, Defendants state as follows:

## I. INTRODUCTION

Over the course of just two months, Plaintiff Scott A. Bright ("**Plaintiff**") made 253 separate transfers totaling $315,353.94 to his account on a designated contract market ("**DCM**") registered with the Commodity Futures Trading Commission ("**CFTC**") operated by KalshiEX, and cycled those funds through more than $14.3 million in transactions on the outcomes of sporting events, from Major League Baseball games to professional tennis matches to professional baseball in Korea and Japan. Plaintiff alleges that his activity on the platform was gambling and that he "lost." He does not allege that anyone misled him about how the platform worked, what it charged, or the risk that any position might lose. Yet, he now sues KalshiEX and its parent, Kalshi Inc., to recover nearly double his own alleged net realized loss under Washington's gambling loss-recovery statute, RCW 4.24.070 (the "**LRA**"), the Consumer Protection Act (the "**CPA**"), and a theory of unjust enrichment.[1]

---

[1] Kalshi disputes that Washington law governs this case. To access Kalshi's platform, Plaintiff agreed to certain terms, including the KalshiEX Rulebook, which provides that New York law governs this dispute: "EACH PARTICIPANT OF KALSHI AGREES THAT ANY ACTION IT BRINGS AGAINST A KALSHI PARTY WILL BE GOVERNED BY NEW YORK LAW, WITHOUT REGARD TO STATUTES, PRECEDENT, LEGAL DOCTRINE, OR CONTRACTUAL PROVISIONS THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF A DIFFERENT JURISDICTION." Because choice of law "is [a] fact-intensive inquiry that 'does not lend itself readily for disposition on a Rule 12(b)(6) motion,'" however, Kalshi bases this motion on the claims as pled in the Complaint. *PTP OneClick, LLC v. Avalara*, 413 F. Supp. 3d 1050, 1068 (W.D. Wash. 2019) (citation modified). Kalshi does not waive its choice-of-law arguments and stands ready to submit additional briefing on the issue at this stage should the Court so require. *See EB Holdings II, Inc. v. Ill. Nat'l Ins. Co*., 108 F.4th 1211, 1219 (9th Cir. 2024) (holding that a choice-of-law argument is not waived when raised at the summary judgment stage).



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

The Court should dismiss each of Plaintiff's claims for the following reasons:

- First, the LRA claim fails, as a matter of law, because Plaintiff's own allegations establish that KalshiEX collected its fees irrespective of whether Plaintiff "won" or "lost," that whatever he lost went to the participant on the other side, that neither Defendant was the proprietor of any game, and that his damages figure is untethered to any identified event, position, date, or amount.
- Second, the CPA claim fails, as a matter of law, because Plaintiff identifies no unfair or deceptive act, cannot plausibly plead causation, and alleges no injury beyond losing trades whose payoff was never guaranteed.
- Third, the unjust-enrichment claim fails because equity cannot award what the statute does not, Plaintiff's alleged losses went to counterparties rather than Defendants, and an express contract governs the parties' relationship.

## II. BACKGROUND

### A. The Parties on the Platform

KalshiEX is a Delaware limited liability company with its principal place of business in New York that operates an internet platform on which users take positions on the outcomes of future events (the "**Platform**"). Dkt. # 1-2 (the **"Complaint"** or **"Compl."**) at ¶ 2.2. Since 2020, KalshiEX has been designated by the CFTC as a designated contract market under the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* (the "**CEA**").[2] The contracts which Plaintiff

---

[2] *See* CFTC, Industry Filings: Designated Contract Markets (DCM) (last visited Oct. 30, 2026), https://www.cftc.gov/IndustryOversight/IndustryFilings/TradingOrganizations?Status=Designated&Date_From=&Date_To=&Show_All=0 (listing Kalshi as a DCM); CFTC*, Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract*

(Footnote Cont'd on Following Page)



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

mischaracterizes as gambling are event contracts offered on the Platform subject to the CEA, in conformance with the rules and regulations of the CFTC, the federal agency which has statutory authority to oversee the CEA.

Kalshi Inc. is a Delaware corporation and the parent company of KalshiEX. Compl. ¶ 2.3. The Complaint does not allege that Kalshi Inc. operated the Platform, entered into any transaction with Plaintiff, or received any specific payment from him; it alleges only, "[o]n information and belief," that Kalshi Inc. "profited from the wagering conducted on the platform" and "received the benefit of that activity." *Id.* ¶¶ 2.4, 5.3.

**B. Plaintiff's Transactions on the Platform**

Plaintiff alleges that between June 17 and August 14, 2026, he transferred $315,353.94 to his Kalshi account in 253 separate debits;[3] that KalshiEX deducted $5,589.05 in funding fees, crediting $309,764.89 to the account; and that he used those funds to take positions on the outcomes of sporting events, including Major League Baseball games, professional tennis matches, and professional baseball in Korea and Japan. *Id.* ¶¶ 4.16–4.18. Plaintiff alleges that he ultimately spent $14,396,457.30 on various transactions; that KalshiEX assessed $84,062.71

*Market*, Nov. 3, 2020, https://www.cftc.gov/filings/documents/2020/orgkexkalshidesignation201103.pdf. Under Federal Rule of Evidence 201, the court may take judicial notice of certain public records, including administrative records and decisions. *See, e.g., In re Avista Corp. Sec. Litig.*, No. CS-02-328-FVS, 2004 WL 7329836, at *3 (E.D. Wash. Aug. 3, 2004) (taking judicial notice of CFTC order pertaining to defendants); *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) ("We may take judicial notice of records and reports of administrative bodies."); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (judicial notice is proper where administrative records are publicly available).

[3] Plaintiff alleges that the transfers were made from his checking account at U.S. Bank. Compl. ¶ 4.16. It is unclear from the Complaint whether all of these transfers were made in Washington, from his personal bank account or another account which he had access to.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

in trading fees on those transactions; and that KalshiEX "collected those fees irrespective of whether Plaintiff won or lost any given position[.]" *Id.* ¶ 4.19. Plaintiff admits that the bid-ask spread on each transaction "accrued to whichever participant took the opposite side." *Id.*

Plaintiff pleads that his "net realized loss, inclusive of fees, was $308,781.62," and that his account retains a balance of $983.27. *Id.* ¶¶ 4.20–4.21. He nonetheless demands $580,544.98, a figure he describes as "[c]omputed on the event-by-event basis" without offsetting winnings in "separate and distinct events." *Id.* ¶¶ 4.22, 5.5. The Complaint does not identify a single event, contract, position, date, or amount that makes up that figure.

**C. The Alleged Counterparty**

The Complaint does not allege that KalshiEX or Kalshi Inc. was the counterparty to any of Plaintiff's positions. It alleges instead that the identity of the participant on the opposite side of each position "is information exclusively within Kalshi's possession," and then, "[o]n information and belief," that a KalshiEX affiliate, "designated market makers compensated or incentivized by Kalshi, or both, took the opposite side of a substantial portion of Plaintiff's positions." Compl. ¶ 4.30. Only "[t]o the extent" the affiliate did so does Plaintiff allege that Defendants were the "dealer or player winning." *Id.* ¶ 4.31. The affiliate is not named as a defendant.

**D. The Attorney General Action and Kalshi's Separate Motion to Stay**

Plaintiff alleges that on March 27, 2026, the Washington Attorney General sued KalshiEX in King County Superior Court alleging that its Washington operations violated the Gambling Act and the Consumer Protection Act, and that the State "filed that complaint *eighty-two (82) days before* Plaintiff's first transfer of funds." *Id.* ¶¶ 4.6, 4.8 (emphasis added). Plaintiff emphasizes that "[e]very one of Plaintiff's 253 transfers, and the entirety of the



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

conduct alleged in this Complaint, postdates the State's public allegation that KalshiEX's Washington operations were unlawful." *Id.* ¶ 4.8. The state court granted a preliminary injunction on July 17, 2026, and entered an amended order on August 12, 2026. *Id.* ¶¶ 4.9–4.10. Plaintiff alleges that his final transfer was on August 14, 2026. *Id.* ¶ 4.13.

The State's action remains pending, and the preliminary-injunction orders are interlocutory. Defendants dispute the State's allegations, the state court's preliminary conclusions, and any allegations that the Platform is governed by state LRAs, including on federal preemption grounds, which are the subject of Defendants' separately filed Motion to Stay.[4] Nothing in this motion concedes that any event contract offered on the Platform constitutes illegal gambling under Washington law.

**E. Plaintiff's Complaint**

On or about September 24, 2026, Plaintiff served, without filing, his Complaint for Recovery of Money Lost at Gambling, Violation of the Consumer Protection Act, and Other Relief (defined above, the **"Complaint"**), thereby commencing this action under Washington Superior Court Civil Rule 3(a). The Complaint alleges three causes of action. Count I seeks $580,544.98 under RCW 4.24.070, alleging that "[e]ach Defendant is a proprietor for whose benefit the wagering was conducted." Compl. ¶¶ 5.1–5.5. Count II alleges that Defendants' "marketing, offering, and acceptance of unlawful wagering from Washington consumers" was an unfair act or practice under RCW 19.86.020 and seeks actual damages, enhanced damages, and attorneys' fees. *Id.* ¶¶ 5.6–5.10. Count III, pleaded in the alternative, asserts unjust

---

[4] Due to a current circuit split detailed in Kalshi's separately filed Motion to Stay, a petition for writ of certiorari presenting the preemption question is now pending. *See Flaherty v. KalshiEX, LLC*, No. 26-299 (U.S. Sep. 8, 2026).



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

enrichment. *Id.* ¶¶ 5.11–5.15.

## III. LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown "that the pleader is entitled to relief." *Id.* at 679.

The Complaint does not meet that standard. Where specific facts are alleged, they defeat Plaintiff's claims. For example, by Plaintiff's own account, Defendants collected their transaction fees regardless of whether he won or lost, his losses went to the participants on the other side of his positions, and he received exactly what he expected. Elsewhere, the Complaint relies on labels, legal conclusions, and allegations made "on information and belief." Finally, Plaintiff never identifies the events on which he allegedly lost $580,544.98. Collectively, these allegations establish, at most, the "mere possibility of misconduct" that is insufficient under *Iqbal*.

## IV. ARGUMENT

### A. Kalshi Operated Under Color of Law

Plaintiff's theory rests on the premise that Kalshi knowingly operated an illegal gambling business in Washington. *See* Compl. ¶¶ 1.1, 4.8, 5.2, 5.7. But that premise ignores the source of Kalshi's authority. Washington federal and state courts have long distinguished between a business that operates under color of law—pursuant to actual governmental



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

authorization whose validity is later questioned—and one that operates in willful disregard of the law. Kalshi falls squarely in the first category, and that distinction defeats the knowing-wrongdoer premise on which each of Plaintiff's claims depends.

This Court drew the governing line in two companion decisions. In *Best Way Motor Freight, Inc. v. United States*, 253 F. Supp. 314 (W.D. Wash. 1966), a carrier whose Interstate Commerce Commission authority was later challenged as invalid was held to have "carried on its second-proviso operations under color of law since it sought and obtained Commission authority to do so," and was "not shown to be guilty of fraud or concealment of fact in any respect." *Id.* at 319. If the operation was invalid, "it is because that carrier, and the Commission, have made a mistake of law." *Id.* By contrast, in *Lynden Transfer, Inc. v. United States*, 263 F. Supp. 336 (W.D. Wash. 1967), the carrier's prior temporary authority had "specifically excluded" household goods, so it "was fully aware that it was prohibited by law" from carrying them, and the court "fail[ed] to understand how the filing of a petition for authority, without more, can be said to supply the authority sought while the petition is pending." *Id.* at 338. Because those shipments "were in wilful [sic] violation of the law," the court refused to "allow a carrier to better his position by electing to flout the law rather than to obey it"—while recognizing that the result differs "where unauthorized operations are carried on 'under color of law.'" *Id.* (citing *Best Way*, 253 F. Supp. at 319).

The Washington Supreme Court has applied the same principle, declining to enjoin an operator that lacked a required certificate "pending the action of the public service commission on their application" and, given "the novelty and the importance of the matters," withholding any injunction "until the respondents' right to such a certificate can be reviewed in the courts



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

and a judicial determination made." *Horluck Transp. Co. v. Eckright*, 56 Wash. 2d 218, 226 (1960).

Kalshi is the carrier in *Best Way*, not the carrier in *Lynden Transfer*. It does not rely on a pending petition; it holds an actual federal designation. The CFTC designated KalshiEX as a DCM under the CEA in 2020, KalshiEX continues to be a registered DCM with the CFTC, and the event contracts at issue are offered subject to the CEA and the CFTC's rules. *See supra* Section II.A & n.2. Kalshi self-certified its sports event contracts in January 2025 through the process federal law prescribes, the CFTC never invoked its review procedure or disapproved them, and the CFTC later appeared as amicus curiae and "joined" KalshiEX's reading of the governing regulation. *KalshiEX, LLC v. Assad*, 190 F.4th 1098, 1106, 1116–17 (9th Cir. 2026) (*citing* 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. §§ 38.4(b), 40.2(a)(2)).

If Kalshi's reading of federal law ultimately does not prevail, it will be because Kalshi—and, for that matter, the CFTC—"made a mistake of law," *Best Way*, 253 F. Supp. at 318, not because Kalshi was "electing to flout the law rather than to obey it," *Lynden Transfer*, 263 F. Supp. at 338. The Complaint pleads no fraud or concealment; to the contrary, Plaintiff alleges that the State's position was a matter of public record before his first transfer. Compl. ¶¶ 4.6–4.8. That defeats the premise of each count.

Count I requires losses at "illegal gambling games," RCW 4.24.070; Compl. ¶ 5.2; Count II rests on conduct "after the State of Washington had publicly alleged that it was unlawful," *id.* ¶ 5.7; and Count III asserts that Kalshi's "retention is inequitable" because its fees were collected "in the conduct of activity this Court has since enjoined," *id.* ¶¶ 5.12, 5.14. But a state's allegation is not an adjudication. Just as a pending petition, "without more," cannot "supply the authority sought," *Lynden Transfer*, 263 F. Supp. at 338–39, a contested



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

enforcement action cannot strip away federal authority a business already holds. Conduct undertaken pursuant to a federal designation, amid an unresolved and divided body of federal law, is not an "unfair" act or practice under the CPA, and disclosed fees collected for services rendered under that designation are not retained under circumstances that make retention unjust. *See infra* Section IV.C and IV.D (discussing CPA and unjust-enrichment claims).

Finally, *Horluck* confirms that Washington law does not penalize operations conducted while their lawfulness awaits judicial determination, particularly where the questions presented are novel and important. 56 Wash. 2d at 226–27. If such operations should not be enjoined prospectively, they should not give rise to retrospective liability—let alone the nearly double recovery Plaintiff seeks. Whether Kalshi's contracts are swaps, whether the CEA preempts Washington's gambling laws as applied to them, and whether the State's enforcement action may proceed remain the subject of pending appellate proceedings and of Defendants' separately filed Motion to Stay. At a minimum, the Court should decline to resolve Plaintiff's claims on the premise that KalshiEX knowingly violated Washington law. And because, as shown below, each count fails on its own elements even if the transactions at issue are assumed to be illegal gambling, the Court need not reach that question to dismiss the Complaint.

### B. Plaintiff Fails to State a Cause of Action Under RCW 4.24.070, the Washington LRA

The LRA permits recovery from two categories of defendants: (1) the "dealer or player winning"; and (2) the "proprietor for whose benefit such game was played or dealt." RCW 4.24.070. Further, it only allows recovery of "the amount of the money . . . so lost" at a *particular* game. *Id.* Plaintiff fails to plead facts showing that either Defendant falls within one of those two categories. Nor does he identify the money he lost at specific games.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

Neither Defendant is the "dealer or player winning," and neither is the "proprietor for whose benefit such game was played or dealt." That is so even accepting Plaintiff's allegation, for purposes of this motion only, that the transactions at issue were "illegal gambling games"—which Kalshi disputes. *See In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1041–43 (N.D. Cal. 2025) (assuming illegality and dismissing claims under the Washington LRA for failure to plead the statutory elements).

### 1. Kalshi Is Not the "Dealer or Player Winning" Under the LRA

A "winner" must have a stake in the outcome of the game. Where, as here, the defendant collects a fee or commission regardless of the outcome of a "game," it cannot be a "winner." Courts construing materially similar loss-recovery statutes agree.

In the recent *Apple* decision, the court, surveying the loss-recovery statutes of nine states, *including Washington*, held that "a person cannot be a winner . . . without risking a loss in a game, wager, or bet," and that a thirty-percent commission was not enough because it was "not contingent on the outcome of any game, wager, or other bet." 806 F. Supp. 3d at 1038. In doing so, the court rejected the argument that the defendants were "the house," because winning players' payouts did not "come out of Defendants' pockets," and rejected as "too attenuated" and "too speculative" the theory that the defendants risked future commission revenue. *Id.* at 1038–39. It likewise rejected the argument that participation in the gambling makes one a winner: "the aspect of 'winner' that Plaintiffs have failed to plead is risk of loss." *Id.* at 1039.

The *Apple* decision is not an outlier. Numerous other courts applying materially similar gambling loss statutes have reached the same conclusion. In *Phillips v. Double Down Interactive LLC*, the Northern District of Illinois, analyzing an analogous statute, the Illinois



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

LRA, held that an online-casino operator was not a statutory "winner" because it never directly participated in the games, had no direct stake in their outcomes, and kept the purchase price whether the player won or lost. 173 F. Supp. 3d 731, 739–41 (N.D. Ill. 2016). Similarly, in *Reuter v. MasterCard International, Inc.*, the Illinois appellate court held that credit-card companies that collected percentage fees on gambling transactions were not "winners" because their earnings were not affected by the outcome of the underlying event; *i.e.*, their fees were earned from the transaction itself, not won from a game. 921 N.E.2d 1205, 1213–15 (Ill. App. 2010). Courts have likewise recognized that a fantasy-sports platform that "risks nothing when it takes entry fees from participants" is not a "winner." *Dew-Becker v. Wu*, 123 N.E.3d 86, 91 (Ill. App. 2018) (discussing *Langone v. Kaiser*, No. 12 C 2073, 2013 WL 5567587, at *6 (N.D. Ill. Oct. 9, 2013)).

Plaintiff pleads himself squarely within that rule. He alleges that KalshiEX "collected [its] fees *irrespective* of whether Plaintiff won or lost any given position," and that the spread on each trade "accrued to whichever participant took the opposite side." Compl. ¶ 4.19 (emphasis added); *see also id.* ¶ 5.14 (fees "collected irrespective of the outcome of any position"). Thus, by Plaintiff's own description, KalshiEX's compensation did not depend on whether Plaintiff won or lost, and whatever Plaintiff lost on a position went to the participant on the other side—not to Defendants. Simply put, KalshiEX was not the "dealer or player winning."

Recognizing this fatal flaw, Plaintiff speculates that a non-party affiliate of Defendants might be the "winner" on his trades. But the Complaint fails to allege any facts showing that such affiliate actually took the opposite side of any particular position Plaintiff held. It alleges only, "[o]n information and belief," that the affiliate, "designated market makers . . . , or both,"



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

took the other side of "a substantial portion" of his positions, and that "[t]o the extent" the affiliate did so, Defendants were winners. Compl. ¶¶ 4.30–4.31. That is precisely the kind of allegation *Iqbal* rejects: it pleads only the "mere possibility" that, on some unidentified trade, a non-party affiliate held the opposing position. 556 U.S. at 679. And even if the affiliate had taken the other side of Plaintiff's trades, Plaintiff pleads no facts that would allow the Court to disregard the corporate form and treat either Defendant as the alter ego of the affiliate.

*Lavery v. Kalshi Inc.* rejected a materially identical pleading brought pursuant to Illinois's Loss Recovery Act against Kalshi Inc., holding that conclusory allegations that unknown users participated in transactions of unknown amounts on unknown dates do not state a loss-recovery claim, and that the prospect of discovery cannot cure that deficiency. No. 25 C 14184, 2026 WL 2018471, at *6 (N.D. Ill. July 13, 2026) (Plaintiff cannot rely on conclusory allegations regarding alleged "gambling transactions of unknown amounts on unknown dates."). Plaintiff's contention that the counterparty's identity is "exclusively within Kalshi's possession" (Compl. ¶ 4.30) is an acknowledgment that he has no facts, not a substitute for them.

**2. Defendants Are Not the "Proprietor for Whose Benefit Such 'Game' Was Played or Dealt"**

As a threshold matter, Kalshi Inc. cannot be a "proprietor" on the facts alleged. Specifically, Plaintiff alleges only that Kalshi Inc. is KalshiEX's parent, that it registered to do business in Washington, and, "[o]n information and belief," that it "profited from the wagering" and "received the benefit of that activity." *Id.* ¶¶ 2.3–2.4, 5.3. A parent company does not become the proprietor of its subsidiary's business by owning it, and the Complaint's



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

blanket declaration that "[e]ach allegation concerning Kalshi is made against each Defendant" (*id.* ¶ 2.5) does not supply the defendant-specific facts Rule 8 requires.

Nor do the facts alleged establish that KalshiEX is a "proprietor." The trades on the Platform are not "games" being conducted by KalshiEX in the way that games of dice or cards conducted in a saloon are. In each instance, the underlying "game" is an independently run event whose outcome benefits others. KalshiEX does not control or conduct Major League Baseball games, and KalshiEX does not benefit from whether the Mariners beat the Yankees on any given night.

Put another way, the LRA does not reach the proprietor of a "wagering" business in the abstract. It reaches "the proprietor for whose benefit such *game* was played or dealt." RCW 4.24.070 (emphasis added). Historically, the text ties proprietor liability to a specific game that is "played or dealt." When a gambling house conducts dice, cards, and table games, it is conducting those games solely for its benefit. The games have no independent value except to generate revenue for the gambling house. This is the setting in which the Washington Supreme Court applied the statute's predecessor in *Heitfeld v. Benevolent & Protective Order of Keglers*, 36 Wash. 2d 685 (1950). The defendant club there conducted dice games in an upstairs room of its own premises, on its own table, presided over by stickmen who took a "rake-off" from the bank and turned the box over to the club's manager at the end of the night. *Id.* at 689–90. In other words, the club was the proprietor of the games because they were created and played directly for its benefit.

There is nothing comparable here. Plaintiff's theory would transform a statute aimed at the keeper of a gambling game into a remedy against any platform, payment processor, or intermediary that earns a fee on transactions relating to an event conducted by, and for the



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

benefit of, others. *Cf. Reuter*, 921 N.E.2d at 1213–15. Courts applying loss-recovery statutes have rejected that expansion. In *Apple*, the court, drawing on *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785, 789 (9th Cir. 2018), and *Lairmore v. Drake*, 202 P.2d 473, 473–74 (Or. 1949), dismissed RCW 4.24.070 claims against platforms that collected a thirty-percent commission on every alleged gambling transaction but did not own or operate the *games*. 806 F. Supp. 3d at 1041; *see also Phillips*, 173 F. Supp. 3d at 739–41. And although some jurisdictions call for liberal construction of their loss-recovery statutes, liberal construction plays a "minimal" role "when the statutory language is clear." *Apple*, 806 F. Supp. 3d at 1040.

### 3. Plaintiff Does Not Plead the Money Lost at Any Identified Game

The statute permits recovery of "the amount of the money or the value of the thing so lost" at a particular game. RCW 4.24.070. Recovery is limited to losses "at or on any illegal gambling games," and a loss not tied to a game or wager is not recoverable. *Apple*, 806 F. Supp. 3d at 1042–43 & n.8 (dismissing RCW 4.24.070 claims for failure to plead recoverable losses). Under *Heitfeld*, each game is a separate cause of action, and the defendant is "entitled to an offset for any money won in that particular game." 36 Wash. 2d at 696. A plaintiff invoking that game-by-game measure must therefore plead the games: *i.e.*, which event, what positions, how much was paid, and how much was returned. The court in *Lavery* required exactly that, dismissing loss-recovery claims against Kalshi Inc. that relied on aggregated losses and did not identify the amount lost on each game and when each transaction occurred. 2026 WL 2018471, at *6.

The Complaint pleads none of this. It asserts a single figure—$580,544.98—"[c]omputed on the event-by-event basis," without identifying a single event, contract, date, or amount that comprises it. Compl. ¶¶ 4.22, 5.5. Moreover, that figure is not plausible on the face



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

of Plaintiff's own allegations. Plaintiff alleges that he transferred $315,353.94 *in total*, that $309,764.89 was credited to his account, and that his net realized loss, inclusive of all fees, was $308,781.62. *Id.* ¶¶ 4.16–4.17, 4.20–4.21. The only way to reach $580,544.98 is to count the same dollars repeatedly as they were redeployed across $14,396,457.30 in transactions, *id.* ¶ 4.19, treating every losing position as a fresh "loss" while ignoring that the funds used to take it came from earlier winnings. Plaintiff cannot recover the more than $265,000 in "money . . . so lost" that he never alleges he parted with. Nor does the Complaint distinguish between positions held to resolution and positions sold before the event concluded—transactions in which no "game" determined the outcome at all.

#### 4. Plaintiff Does Not Plead that His Transactions Occurred in Washington

State LRA statutes generally apply only to conduct occurring within the state and do not apply extraterritorially. A plaintiff therefore must plead that he was physically located in the state when each relevant transaction occurred; residence, account registration, or nationwide accessibility is not enough. In *Lavery*, the court held that "state statutes apply only to conduct that occurs within the state's borders" absent clear contrary statutory language, and dismissed LRA claims against Kalshi because the complaint did not allege that any user "was located in [the states which plaintiff brought LRA claims under] when he placed a losing trade or wager." 2026 WL 2018471, at *5. The court rejected the argument that a plaintiff need not plead "transaction-level geographic detail at the outset of the case," holding that allegations that Kalshi "made its platform available" in the state, "that users placed wagers through the platform," and that those wagers produced losses failed to connect the transactions to the state. *Id.* Notably, the



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

*Lavery* plaintiff conceded that "the relevant conduct occurs where the user is located when placing wagers and incurring losses." *Id*.

Here, Plaintiff alleges that he resides in Bellevue, that he "opened his Kalshi account in Washington," and that the platform "remained fully accessible to Plaintiff in Washington." Compl. ¶¶ 2.1, 4.13. He does not allege where he was physically located when he entered into any of the transactions on which he claims losses.

### C. Plaintiff Has Failed to State a Cause of Action Under the CPA

A private CPA plaintiff must plead (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) injury to the plaintiff in his business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986).

#### 1. Plaintiff Fails to Identify Any Unfair or Deceptive Act

The first element of a CPA claim—an unfair trade practice—may be established by a showing that an act or practice (a) constitutes a per se unfair trade practice, or (b) is otherwise unfair or deceptive. *Id*. at 786. Here, Plaintiff's CPA claim fails as a matter of law because he cannot show that Kalshi engaged in an unfair or deceptive trade practice.

##### *a. There Is No Per Se CPA Violation*

Plaintiff cannot establish a per se violation. For a statutory violation to constitute a per se unfair trade practice, "the legislature must specifically declare that a violation constitutes an unfair trade practice or an unfair or deceptive act in trade or commerce." *G.G. v. Valve Corp.*, No. C16-1941JLR, 2020 WL 7385710, at *7 (W.D. Wash. Dec. 16, 2020) (citing *Hangman Ridge*, 105 Wash. 2d at 784–85). Count II rests on the allegation that Kalshi "offered and accepted that wagering in violation of RCW 9.46.240 and chapter 9.46 RCW." Compl. ¶ 5.7.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

But the Complaint identifies no provision of chapter 9.46 RCW, or of RCW 4.24.070, in which the Legislature has declared that a violation is an unfair or deceptive act in trade or commerce. Washington courts apply this requirement strictly.

A per se unfair trade practice exists only where a defendant violates a statute that includes a specific and unambiguous legislative declaration of public interest. *Compare Brummett v. Washington's Lottery*, 171 Wash. App. 664, 677–78 (2012) (dismissing per se CPA claim where statute did not contain specific declaration of public interest) (citing *Hangman Ridge*, 105 Wash. 2d at 786), *with Handlin v. On-Site Manager Inc.*, 187 Wash. App. 841, 848 (2015) (statute at issue specifically declared "that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act").

Were there any doubt, *Hangman Ridge* expressly modified *State v. Reader's Digest Ass'n, Inc.*, 81 Wash. 2d 259, 269 (1972), explaining that to the extent "*Reader's Digest* suggests that this court will declare conduct which is 'illegal' and 'against public policy' to be a per se unfair trade practice, it is modified." *Hangman Ridge*, 105 Wash. 2d at 786. *Hangman Ridge* further explained that, since *Reader's Digest* was decided in 1972, the Legislature has specifically invoked the CPA in a statute when it intended to create a per se violation. *Id.* at 786–87 (citing various RCW provisions). The Legislature did not invoke the CPA in RCW 9.46.010, which refers only to the State's "public policy." RCW 9.46.010 has been amended at least six times since *Reader's Digest*, yet the Legislature has never defined "the exact relationship between [the] statute and the CPA" such that a court would acknowledge that relationship and recognize a per se violation. *Hangman Ridge*, 105 Wash. 2d at 787.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

This Court rejected the same theory in *G.G.* There, the plaintiffs alleged that the defendant committed per se CPA violations "under the Gambling Act by engaging in professional gambling without a license." *G.G.*, 2020 WL 7385710, at *7. The court held that the Gambling Act does not "include[] a specific declaration that a violation constitutes an unfair trade practice or an unfair or deceptive act in trade or commerce," and that the declarations of public interest in RCW 9.46.010 "serve only to establish that a violation of the statute has a public interest impact; they do not establish a per se unfair trade practice." *Id.* (citing *Hangman Ridge*, 105 Wash. 2d at 790–92). The court therefore dismissed the per se claims with prejudice. *Id.* at *8. The same result follows here.

*b. Plaintiff Otherwise Fails to Identify Any Unfair or Deceptive Act*

Plaintiff alleges that Defendants' "marketing, offering, and acceptance of unlawful wagering from Washington consumers . . . constitutes an unfair act or practice." Compl. ¶ 5.7. But the Complaint never identifies a single advertisement Plaintiff saw, a single statement made to him, or a single feature of the platform that misled him. A consumer-protection plaintiff must identify a specific deceptive or unfair act, causation, and a legally cognizable injury; labels and conclusory references to unlawfulness do not satisfy those requirements. Nor can Plaintiff plausibly do so. Whatever might be said of a single trade, Plaintiff admits to 253 of them; he cannot plausibly claim that he was deceived into placing each one. As the saying goes, fool me once, shame on you; fool me twice, shame on me.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

### 2. Plaintiff Does Not Plead That Any Act of Defendants Caused His Injury

Plaintiff does not allege that he relied on any representation by Defendants or that he would have refrained from trading had he known otherwise. That omission distinguishes this case from decisions permitting consumer-protection claims to proceed against gaming operators. In *Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024), and in *Zhen v. DraftKings, Inc.*, No. 25-cv-04618-CRB, 2026 WL 2186199, at *1 (N.D. Cal. July 29, 2026), the plaintiffs alleged that the defendant represented that its games were legal and that they would not have played had they known otherwise—reliance-based allegations that *Zhen* treated as materially different from merely receiving what was purchased. 2026 WL 2186199, at *4–5. No such allegation appears here.

Plaintiff's own allegation that the Platform's alleged illegality was publicly known before he made a single transfer further undermines this claim, and suggests that Plaintiff traded with full knowledge of the State's position. Indeed, Plaintiff builds his claim on the premise that the Attorney General filed suit "eighty-two (82) days before Plaintiff's first transfer," and that "[e]very one of Plaintiff's 253 transfers . . . postdates the State's *public* allegation that KalshiEX's Washington operations were unlawful." Compl. ¶ 4.8 (emphasis added). Yet Plaintiff offers no allegation plausibly explaining why such an active trader continued transferring funds after the State's public allegation, after the state court granted a preliminary injunction on July 17, 2026, and after it entered an amended order on August 12, 2026. Compl. ¶¶ 4.9–4.10, 4.13. Moreover, Plaintiff cannot rely on the preliminary injunction for trades made before August 12, 2026, because the July 17, 2026 order did not bar Kalshi from operating in Washington.



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

### 3. Plaintiff Does Not Plead an Injury to Business or Property

Plaintiff also fails to plead a cognizable injury. A consumer who purchases conforming goods or services, with no objective, measurable disparity between what was reasonably expected and what was received, has not suffered an injury of the kind consumer-protection statutes redress. Plaintiff does not allege that the positions he purchased differed in any way from what he expected; he alleges only that their outcomes were not what he wanted. Losing a trade is not a cognizable injury, and consumer disappointment is not consumer deception.

In *Antar v. BetMGM, LLC*, the Third Circuit held that a bettor could not establish ascertainable loss because each bet delivered what the plaintiff purchased: a gambling experience in which winning was not guaranteed. No. 24-1364, 2025 WL 1219316, at *3 (3d Cir. Apr. 28, 2025); *see also Robey v. SPARC Grp. LLC*, 311 A.3d 463, 467 (N.J. 2024). Courts in this Circuit and District apply the same principle to the analogous "business or property" requirement under civil RICO, holding that a disappointing outcome after a consumer receives what was purchased is not an injury to property. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002); *McLeod v. Valve Corp.,* No. C16-1227-JCC, 2016 WL 5792695, at *4 (W.D. Wash. Oct. 4, 2016); *see also Romano v. Torch Elecs., LLC*, No. 2:23-cv-04043, 2023 WL 9064602, at *3 (W.D. Mo. Aug. 21, 2023).

Simply put, Plaintiff received exactly what he paid for. He alleges that his funds were credited to his account, that he used them to take positions on sporting events, presumably for profit, and that those positions were matched with counterparties and resolved according to the outcomes of the underlying events. Compl. ¶¶ 4.17–4.19. He *does not* allege that any position failed to settle as specified, that any fee exceeded the disclosed amount, or that any order was mishandled. His alleged "injury" is that he lost on the merits of trades whose payoff was never



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

guaranteed. Moreover, a consumer who could have stopped trading, declined to transfer additional funds, or chosen another form of entertainment cannot plausibly characterize his voluntary, repeated transactions as an injury caused by the defendant. *See Phillips*, 173 F. Supp. 3d at 739–41. Plaintiff's allegations regarding funding and trading fees, Compl. ¶¶ 4.17, 4.19, 5.14, fare no better: Plaintiff does not allege that the fees were undisclosed, miscalculated, or charged for services not rendered.

### D. Plaintiff Fails to State a Claim for Unjust Enrichment

Unjust enrichment requires that (1) the defendant received a benefit, (2) at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment. *Young v. Young*, 164 Wash. 2d 477, 484–85 (2008). Count III fails for three separate reasons.

#### 1. Equity Does Not Permit Recovery of Gambling Losses Beyond What the Statute Allows

Count III asks the Court to award in equity exactly what Count I seeks at law: the money Plaintiff allegedly lost trading on sporting events. Compl. ¶¶ 5.12–5.15; *see id.* ¶ 5.13 (relying on *Heitfeld*). The Washington Supreme Court has explained that "[a]t common law there could be no recovery of money lost at gambling," because "both parties had engaged in a wrongful act, and since they were in pari delicto, the courts denied either of them any remedy." *Heitfeld*, 36 Wash. 2d at 691–92. The common-law bar has been "abrogated in varying degrees" by statute, *id.* at 692, and in Washington the abrogation is RCW 4.24.070, which defines who may be sued and what may be recovered. Plaintiff's own theory is that he knowingly participated in an illegal transaction *after* the State had publicly declared it



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

unlawful. Compl. ¶ 4.8. On that theory, the only path to recovery is the statute. If Count I fails, Plaintiff cannot obtain the same relief by recasting it as restitution. *See Apple,* 806 F. Supp. 3d at 1045 (dismissing unjust-enrichment claims as duplicative of loss-recovery and consumer-protection claims, "whether or not Plaintiffs have successfully stated their other claims").

**2. Plaintiff's Allegations Negate Any Inequitable Retention By Kalshi**

Count III alleges that "Kalshi received $315,353.94 of Plaintiff's funds and retained the entirety of that sum." Compl. ¶ 5.12. That conclusion is contradicted by Plaintiff's specific factual allegations, which control. *See Iqbal*, 556 U.S. at 678–79. Specifically, Plaintiff alleges that $309,764.89 was credited to his own account; that he used those funds to take positions; that the spread on each position "accrued to whichever participant took the opposite side"; that his net realized loss, inclusive of fees, was $308,781.62; and that $983.27 remains in his account. *Id.* ¶¶ 4.17, 4.19–4.21. Thus, by Plaintiff's own account the money he lost on his positions went to the counterparties on the other side of those positions—not to Defendants—and he does not allege that Defendants retained any of it. Plaintiff's assertion that retention is inequitable "irrespective of how Kalshi allocated those funds internally or among counterparties," *id.* ¶ 5.13, concedes the point: unjust enrichment requires that the *defendant* have received and retained the benefit.

The only amounts Plaintiff alleges Defendants actually kept are the $5,589.05 in funding fees and $84,062.71 in trading fees. *Id.* ¶¶ 4.17, 4.19, 5.14. But Plaintiff alleges no facts making retention of those fees unjust. He does not allege that the fees were undisclosed, miscalculated, or charged for services not rendered. To the contrary, he alleges that Defendants credited his deposits, matched his orders, and settled his positions. *Id.* ¶¶ 4.17–4.19. A party that receives payment for services it actually provides is not unjustly enriched. And as to Kalshi Inc., the



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

Complaint alleges no benefit at all beyond the conclusory assertion, "[o]n information and belief," that Kalshi Inc. profited from the platform. *Id.* ¶ 2.4.

### 3. An Express Contract Governs the Parties' Relationship

Unjust enrichment is a basis for recovery in the absence of a contract; a party to a valid express contract is bound by it and may not bring an unjust-enrichment claim that contradicts its terms. *See Chandler v. Wash. Toll Bridge Auth.*, 17 Wash. 2d 591, 604 (1943) ("A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.") Plaintiff affirmatively pleads that his account was governed by KalshiEX's Member Agreement and Rulebook, which set the terms on which deposits, trades, and fees were handled. Compl. ¶¶ 4.23–4.27. Count III should be dismissed as to KalshiEX on this basis.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated this 30th day of October, 2026

**DUANE MORRIS LLP**

*/s/ Jessica E. La Londe*
Jessica E. La Londe (WSBA# 56399)
Spear Tower, One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
P: 415.957.3225
F: 415.520.9395
jelalonde@duanemorris.com

*Attorney for Defendants KalshiEX LLC and Kalshi Inc.*

**CERTIFICATION**

I certify that this motion contains 6,983 words, in compliance with the Local Civil Rules.

*/s/ Jessica E. La Londe*
Jessica E. La Londe



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

# CERTIFICATE OF SERVICE

I certify that on the date stated below, I caused a true and correct copy of the foregoing **Defendants KalshiEX LLC and Kalshi Inc.'s Motion to Dismiss** to be served on the following persons in the manner indicated below:

| | |
|---|---|
| X | **BY U.S. FIRST CLASS MAIL**: I enclosed the documents in a sealed envelope or package addressed to the person(s) listed below by placing the envelope or package(s) for collection and transmittal by United States Postal Service first class mail pursuant to my firm's ordinary business practices, which are that on the same day the envelope or package is placed for collection, it is deposited in the ordinary course of business with the USPS for mailing, with all charges fully prepaid. |
| X | **BY ELECTRONIC SERVICE**: I caused the documents to be sent to the person(s) at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

| | |
|---|---|
| Michael Daudt<br>101 Yesler Way, Suite 600<br>Seattle, WA 98104<br>Email: mike@daudtlaw.com | Attorney for Plaintiff |

Dated: October 30, 2026

*/s/ Jessica E. La Londe*
Jessica E. La Londe (WSBA# 56399)
jelalonde@duanemorris.com

*Attorney for Defendants*



Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127